# AFFIDAVIT OF TASK FORCE OFFICER CHRISTOPHER KLIER IN SUPPORT OF CRIMINAL COMPLAINT

I, Task Force Officer Christopher M. Klier, being duly sworn, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. I am a Quincy Police Detective assigned to the Narcotics and Organized Crime Unit and have been so employed as a police officer since 2001. I am also a Task Force Officer with the Drug Enforcement Administration ("DEA") presently assigned to the Boston Tactical Diversion Squad ("TDS"), which is comprised of local, state, and federal law enforcement agencies. DEA Boston TDS conducts multijurisdictional state and federal drug investigations in an attempt to identify and dismantle Drug Trafficking Organizations ("DTOs") that distribute throughout the District of Massachusetts and neighboring districts.

3. I am a graduate of the Massachusetts Criminal Justice Training Council's Police Academy (Massachusetts Police Corps 01-01). I hold a Master of Science degree in Criminal Justice Administration from Western New England College and a Bachelor of Arts degree from Assumption College. In addition to the annual 40-hour in-service training, I have participated in several educational seminars and courses pertaining to narcotics investigations. I have completed the 80-hour Basic Narcotics Investigator School hosted by the DEA. This training covered investigative methods, surveillance techniques, writing and executing search warrants and working with confidential informants. I have also received 48 hours of training pertaining to proactive criminal enforcement hosted by the Massachusetts State Police (PACE). This training focused on drug and criminal interdiction, officer survival, and secret electronic/hydraulic compartments found in vehicles for the purpose of hiding drugs, money, and weapons. I have also attended

various training seminars (60 hours) administered by Professional Law Enforcement Training (PLET), including patrol officer drug investigations, cultivating, and managing confidential informants and undercover operations. I am also a member of the New England Narcotics Officers Association and attended the annual narcotics seminar since 2018.

4. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

5. Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and in furtherance of their drug trafficking activities, but are wary of law enforcement's use of electronic surveillance and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement. As a result of my training and experience, I am familiar with the manner in which drug traffickers use telephones; coded, veiled, or slang-filled telephone conversations; electronic text messages; and other means to facilitate their illegal activities. I am also familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversations and operations. Based on my training and experience, I am familiar with the methods of operation used by drug traffickers, including the use of cellular telephones to conduct their drug trafficking activities.

6.      Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, state, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities.  Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking.  I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

## PURPOSE OF AFFIDAVIT

7.      I submit this affidavit in support of an application for a criminal complaint charging that, on or about January 4, 2024, Michael MARSHALL ("MARSHALL") did knowingly and intentionally distribute illegal anabolic steroids, Schedule III controlled substances, in violation of Title 21, United States Code, Section 841.

8.      I currently am participating in an investigation into criminal activity of MARSHALL and his associates, both known and unknown (hereinafter, the "Target Subjects"). I am familiar with the facts and circumstances of this investigation, and I have received information from a variety of sources, including but not limited to other law enforcement officers and agents, drug seizures, sources of information, consensually recorded calls and meetings, reviews of materials obtained through search warrants, physical, video, and electronic surveillance and my personal review of records relating to the investigation.

9.      This Affidavit is submitted for the limited purpose of establishing probable cause for the requested complaint and arrest warrant.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.   I have set

forth only the facts that I believe are needed to establish the requisite probable cause for this charge. All times herein are approximate.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

10. Since at least March of 2022, agents assigned to DEA TDS, along with investigators assigned to Homeland Security Investigations ("HSI") Border Enforcement Security Task Force ("BEST") and the United States Postal Inspection Services ("USPIS") have been investigating steroids distributors involved in the manufacturing of and distribution of illegal anabolic steroids in pill and liquid form in Massachusetts and elsewhere.

11. In or around early August 2023, a cooperating source (hereinafter, "CS-1")[1] obtained a phone number for "Mike" from whom CS-1 could purchase illegal anabolic steroids. That phone number, subscribed to MARSHALL with a billing address of MARSHALL's residence in Quincy, Massachusetts, ended in -3679.[2] Based upon my training, experience, and familiarity with the investigation, I believe this phone number to be used by MARSHALL.

12. At the direction of agents, CS-1 engaged in six controlled purchases of illegal anabolic steroids from MARSHALL from August 9, 2023 through and including February 29, 2024. The controlled purchases all took place in a similar fashion. In connection with each, CS-1

---

[1] [redacted]

[2] The entirety of the phone number, and MARSHALL's address is known to investigators at this time. They will be hereinafter called the MARSHALL Phone and the MARSHALL Residence, respectively.

4

communicated with MARSHALL over the MARSHALL Phone to make arrangements to purchase steroids. Agents photographed and preserved the text exchanges between MARSHALL and CS-1. For all controlled purchases, CS-1 and MARSHALL agreed on a quantity and a price for the steroids and agreed to meet in or around the Quincy or Braintree, Massachusetts area. All the controlled purchases were captured on audio/video recording device. Prior to and after each controlled purchase, investigators searched CS-1 and CS-1's vehicle for contraband and money. Investigators followed CS-1 to and from the controlled purchase location. Investigators also provided CS-1 with official agency funds to use to purchase steroids.

13.   In the days leading up to January 4, 2024, CS-1 messaged the MARSHALL Phone to place an order for steroids in pill and liquid form, specifically, "8 win, 2 clen, 5 test, 5 tren," which investigators know to reference eight fifty packs of winstrol pills, 2 fifty packs of clenbuterol, five vials of liquid testosterone, and 5 vials of liquid trenbolone. They agreed to meet in the evening of January 4, 2024 at the Home Depot located at 465 Centre Street in Quincy, Massachusetts.

14.   On January 4, 2024, at around 6:30 p.m., MARSHALL exited the MARSHALL Residence, entered his Nissan Rogue, and drove directly to the Home Depot. Once there, CS-1 entered and exited less than a minute later from MARSHALL's Nissan. CS-1 met agents at a predetermined meet location and provided agents with a blue and white Amazon Prime plastic bag containing liquid and tablet ("oral") steroids which included 8 fifty packs of winstrol pills, 2 fifty packs of clenbuterol, five vials of liquid testosterone, and 5 vials of liquid trenbolone, that is, the specific steroids ordered by CS-1. Agents sent all suspected steroids to the DEA Laboratory for testing and analysis, the results of some are still pending. Some test results were completed for some of the tablet and liquid suspected steroids. Test results related to some of the tablets and vials

of liquid were confirmed to contain illegal anabolic steroids, schedule III-controlled substances. Surveillance followed MARSHALL's Nissan after the controlled purchase as it drove directly to a self-storage facility in Quincy, Massachusetts. The Nissan entered the secured area of the facility and parked next to the building. MARSHALL returned to the Nissan a short time later with a box and drove back to the MARSHALL Residence.

15. I have reviewed the audio and video recording of this controlled purchase during which CS-1 entered MARSHALL's Nissan and MARSHALL stated to him, "You weren't waiting long hopefully I was trying to be quick," to which CS-1 stated, "No no no yeah I literally got here like two minutes ago so it was perfect timing." After that, CS-1 gave MARSHALL the official agency funds and in exchange, MARSHALL provided CS-1 with the bag containing the suspected steroids. Shortly thereafter, CS-1 exited MARSHALL's Nissan.

//
//
//
//
//
//
//
//
//
//
//
//

## **CONCLUSION**

Based on the information set forth above, probable cause exists to believe that MARSHALL engaged in a violation of 21 U.S.C. § 841, distribution of illegal anabolic steroids, schedule III-controlled substances.

I, Christopher Klier, hereby state under penalty of perjury that the contents of this affidavit are true and correct to the best of my knowledge, information, and belief.

/s/ Christopher M. Klier
_____
CHRISTOPHER M. KLIER
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to by telephone in accordance with Fed. R. Cr. P. 4.1 this __6__ day of March 2024

_____
HONORABLE M. PAGE KELLEY
United States Magistrate Judge
District of Massachusetts